UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CALEB LEWIS,

                Plaintiff,                              Case No. 1:08-cv-28

v.                                                          Honorable Janet T. Neff

PATRICIA CARUSO et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff is incarcerated in the Oaks Correctional Facility. In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections Director Patricia Caruso, Oaks Warden Cindi Curtin, Oaks Assistant Resident Unit Supervisor Larry Weaver and Oaks mail room employee J. Peck.

Plaintiff's complaint concerns the seizure and destruction of Uniform Commercial Code (UCC) materials that were sent to Plaintiff through the mail. On June 21, 2007, the Oaks mail room received a package addressed to Plaintiff containing 82 pages of UCC materials, including filing instructions and forms for filing. (Notice of Package/Mail Rejection, Exh. 1, docket #1-2.) Defendant Peck issued a rejection notice and confiscated the property pursuant to MICH. DEP'T. OF CORR., Policy Directive 05.03.116(HH)(23) (eff. Jan. 1, 2006). Under that policy provision, prisoners may not receive "Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC." *Id.*

Defendant Weaver conducted an administrative hearing regarding the rejection notice on July 16, 2007. In upholding the rejection, Weaver stated:

> Michigan Department of Corrections Policy Directive 05.03.118 . . . prohibits [prisoners] from receiving or possessing mail if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner, this includes:
>
> 1. Mail for the purpose of operating a business enterprise from within the facility Paragraph (D7). The only legitimate purpose of possessing blank Uniform Commercial Code forms would be to conduct commercial business enterprises.

(Admin. Hr'g Report, Exh. 2, docket #1-2.) Plaintiff was given thirty days to have the materials sent out of the facility at his expense or have them picked-up from the facility by a non-prisoner before they were destroyed. Plaintiff pursued the matter through the three-step prison grievance process.

Plaintiff claims that Defendants violated his First Amendment right to receive mail. Plaintiff further claims that Defendants seized and destroyed his personal property without just compensation in violation of his due process rights. Plaintiff also claims that the rejection of the UCC materials violated the preliminary injunction issued by the Eastern District of Michigan in *Jones v. Caruso*, No. 05-CV-72817-DT, 2006 U.S. DIST. Lexis 70216. In addition, Plaintiff claims that Defendants failed to provide the sender of the package a copy of the rejection notice, in violation of department policy and the sender's due process rights.

II. Failure to State a Claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **First Amendment**

Plaintiff fails to state a claim with regard to his First Amendment rights to receive mail or possess certain UCC materials. It is well accepted that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); *see also Turner v. Safley,* 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner,* 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson,* 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish,* 441 U.S. at 547).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner,* 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner,* 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

      1.      there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

      2.      whether there are alternative means of exercising the right that remain open to prison inmates;

      3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

      4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner,* 241 F.3d at 484 (quoting *Turner,* 482 U.S. at 89-91). Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.*

      The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See, e.g., United States v. Gordon,* No. CV 205-158, 2005 WL 2237640 (S.D. Ga. Aug. 25, 2005) (prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); *United States v. Orrego,* No. 04 CV 0008 SJ, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (prisoner purported to copyright his

name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams,* No. CV-04-863-HU, 2005 WL 697041 (D. Or. Mar. 24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials seeking payment for unauthorized use of his copyrighted name); *United States v. Martin*, 356 F.Supp.2d 621 (W.D. Va. 2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); *United States v. Brum,* No. CIV. A. 105CV110, 2005 WL 1606584 (E.D. Tex. July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald,* No. 2:05 CV 111, 2005 WL 1427718 (W.D. Mich., June 13, 2005) (prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder,* No. 3:04-1044, 2005 WL 2715666 (M.D. Tenn. Sept. 2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00).

That the MDOC has a legitimate penological purpose in preventing such behavior cannot seriously be questioned. It is well established that safety and internal security is a legitimate goal for prison administrators. *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003); *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989); *Hewitt v. Helms*, 459 U.S. 460, 473 (1983); *Turner*, 482 U.S. at 78, 86, 87, 92. The MDOC also has an interest in preventing prisoners from committing further crimes. The MDOC mail policy represents a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in fraudulent and illegal behavior. While Policy Directive 05.03.118(HH)(23) prevents prisoners from possessing "books, pamphlets, forms or other material regarding actions that can be taken under the UCC," prisoners were still permitted to possess "publications in the law library, such as Michigan Compiled Laws Annotated, that set forth the

statute or provide a scholarly legal analysis of the UCC." The Court concludes, therefore, that there exists a "valid, rational connection" between the policies at issue and a legitimate governmental interest.

As for the remaining *Turner* factors, they do not weigh in Plaintiff's favor. The Constitution does not require that prison officials accommodate inmates' rights in the manner most convenient to inmates. *See, e.g., Jones,* 697 F.2d at 803. Rather, the Constitution instructs that prison officials may not infringe upon inmates' constitutional rights, unless necessitated by a legitimate penological purpose. While prisoners within the MDOC may not possess some UCC materials, they have adequate alternatives to possess and read a wide variety of other political, economic, philosophical and legal materials. Furthermore, since all inmates are prohibited from engaging in business or commerce while incarcerated, Plaintiff has no need to possess commercial law material. The resources of the MDOC are limited and the Court must accord "wide-ranging deference" to the solutions implemented by prison officials to combat the very serious problem of UCC-related fraud perpetrated by prisoners. Moreover, the burden of accommodating Plaintiff's access to commercial law materials would nullify any benefit the MDOC is seeking to achieve by by eliminating this material from the prison. The Court concludes, therefore, that the challenged policy was reasonably related to legitimate penological interests and satisfies the relevant legal standard. Therefore, Plaintiff has suffered no compensable infringement of his constitutional rights.

B.     **Due Process**

Plaintiff claims that Defendants seized and destroyed his personal property without just compensation in violation of his due process rights. The Fourteenth Amendment provides, in part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process generally requires that the state provide

a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). Where a pre-deprivation hearing is impractical, a post-deprivation hearing may be constitutionally adequate. *Zinermon*, 494 U.S. at 128. Plaintiff received a post-deprivation administrative hearing. A pre-deprivation hearing would have been impractical because of the prison's legitimate penological need to seize contraband immediately upon discovery. *See Pearce v. Sapp*, No. 97-6373, 1999 WL 503568, at *2 (6th Cir. July 9, 1999). Plaintiff also was able to seek relief through the prison grievance process. In addition, Plaintiff had the option to preserve the UCC materials by sending them out of the prison at his expense or having them picked-up by someone from outside the prison. Because Plaintiff had adequate post-deprivation remedies, he fails to state a due process claim. *See Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc); *Pearce*, 1999 WL 503568, at *2.

C. **Remaining Claims**

Plaintiff also contends that the rejection of the UCC materials violated the preliminary injunction issued by the Eastern District of Michigan in *Jones v. Caruso*, No. 05-CV-72817-DT, 2006 WL 2805643 (E.D. Mich. Sept. 28, 2006). In that case, the Eastern District of Michigan issued a preliminary injunction pending resolution of that case enjoining the defendants from enforcing MICH. DEP'T. OF CORR., Policy Directive 05.03.118(HH)(23) because the provision is impermissibly vague with regard to the types of UCC materials that are permitted. The case remains pending in the Eastern District. The preliminary injunction entered by the Eastern District is not binding on this Court. As stated above, this Court finds no violation of Plaintiff's First Amendment rights.

Plaintiff further claim that Defendants failed to provide the sender of the package a copy of the rejection notice, in violation of department policy and the sender's due process rights. Defendants' alleged failure to comply with a policy or administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Moreover, Plaintiff lacks standing to assert the rights of the person who sent him the UCC materials.

## **Recommended Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).


Dated:   February 4, 2008                /s/  Joseph G. Scoville
                                         United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).